UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | Civ. No. 24-916 (ZNQ)(JBD) |
| Plaintiff, | MEMORANDUM ORDER |
| v. | |
| SOMERSET COUNTY JOINT INSURANCE FUND, | |
| Defendant. | |

In this case, plaintiff National Union Fire Insurance Company of Pittsburgh, PA and defendant Somerset County Joint Insurance Fund (JIF) seek a declaration of their respective coverage responsibilities under competing insurance policies. A discovery dispute has arisen concerning the scope and import of the New Jersey Supreme Court's decision in *Statewide Insurance Fund v. Star Insurance Company*, 253 N.J. 119 (2023). So far as this Court can tell, no court has addressed a dispute like the one presented here. For the reasons set forth below, the Court denies National Union's requests to obtain communications and documents relating to the JIF's reinsurance policy and sustains the JIF's objections to those requests.

# I. BACKGROUND

## A. The Underlying Action and Relevant Insurance Coverage

The basic facts underlying this case are undisputed. An individual suffered catastrophic injuries while being transported in an ambulance owned by the

Borough of South Plainfield, New Jersey.  The ambulance had been driven by an employee of the South Plainfield Rescue Squad, Inc., a juridical entity separate from the Borough.  The injured individual sued the Borough, the Rescue Squad, and the driver in New Jersey state court.  The accident and state court litigation implicated multiple insurance policies, which the Court briefly summarizes.[1]

Through its membership in the Somerset County JIF, the Borough secured liability coverage for incidents arising from the ambulance and its permissive drivers, with a per-incident coverage limit of $5 million.  [Dkt. 1] ¶ 12.  In addition, the JIF maintained a reinsurance policy issued by non-party Munich Reinsurance America Inc. (MunichRe) to reimburse the JIF for funds paid under the JIF's liability policy.  That reinsurance policy provided for an initial retention amount of $250,000, meaning that the JIF is responsible for the first $250,000 of covered liabilities.  [Dkt. 1] ¶¶ 13, 17.  And while the JIF ostensibly is responsible under its own policy for the remaining $4.75 million, as a result of the reinsurance policy, MunichRe is responsible for reimbursing the JIF for any funds paid over the retention amount and up to the $5 million policy limit.  [Dkt. 27] at 4; [Dkt. 28] at 2.

---

[1]    As the Court will discuss, under New Jersey law, the Somerset County JIF is not an insurance company at all and the liability coverage that it provides is not "insurance."  Rather, the JIF is a pooled fund that provides a mechanism for municipalities to join together to self-insure against the risk of a variety of potential liabilities.  Appreciating this nuance, the Court nonetheless refers, for simplicity's sake, to "insurance" and "policies" to describe the liability coverage that the respective parties, including the JIF, provided.

The Rescue Squad, for its part, maintained two insurance policies relevant here. Those policies, both of which National Union issued, covered liabilities arising from the Rescue Squad's and its employees' activities. [Dkt. 27] at 2. One policy (an auto policy) had a $1 million per-occurrence coverage limit, and the other (a general excess policy) had a $3 million per-occurrence coverage limit. *Id.* The net result of these two National Union policies is that the Rescue Squad had $4 million in available coverage for potential liability arising from the underlying accident.

These policies underlie the dispute in this case: National Union and the JIF each believe that their own policies provide excess coverage and the other's provide primary coverage. The underlying litigation in state court ultimately settled for $4.75 million. National Union and the JIF entered into a funding agreement, pursuant to which they both contributed funds to make that payment. But each reserved their rights to seek, in this litigation, a declaration of their respective coverage responsibilities under the competing policies. [Dkt. 28] at 2-3.

Here, National Union's complaint seeks a declaratory judgment that the JIF bears primary responsibility for paying the settlement amount in the underlying litigation. Alternatively, National Union seeks a declaratory judgment that the JIF policy and the National Union auto policy bear co-primary coverage responsibility that is primary to the National Union excess policy. [Dkt. 1] at 2, ¶¶ 14-15, 18-20; *see also* [Dkt. 1-3] at SCJIF-0011, ¶ 4(a) and (d). The JIF's counterclaim seeks a declaratory judgment that both the National Union auto policy and the National

3

Union excess policy are primary to the JIF's coverage responsibility.  [Dkt. 5] at 14.

That substantive dispute and the present discovery dispute turn on specific language

in the applicable policies and the New Jersey Supreme Court's decision in *Statewide*.

Accordingly, the Court proceeds by summarizing the relevant policy language, then

the *Statewide* decision, and then the discovery dispute that has arisen.

      B.    <u>Relevant Policy Language</u>

The JIF policy contains a provision bearing the heading "Other Insurance";

it states that "[f]or any covered 'auto' you [*i.e.*, the Borough] own, this Coverage

Form provides primary insurance.  For any covered 'auto' you don't own, the

insurance provided by this Coverage Form is excess over any other collectible

insurance."  [Dkt. 1-3] at SCJIF-0011.  For present purposes, there is no question

that the Borough owned the ambulance and that it was a covered "auto" under the

JIF policy.  There also is no dispute that the JIF policy covered the permissive driver

of the ambulance.  [Dkt. 5] at 3.

The National Union policies also contain "other insurance" provisions.

The auto policy provides that "[f]or any covered 'auto' you [*i.e.*, the Rescue Squad]

own, this Coverage Form provides primary insurance.  For any covered 'auto' you

don't own, the insurance provided by this Coverage Form is excess over any other

collectible insurance."  [Dkt. 1-6] at 47.  Similarly, the excess policy provides that

"[t]his insurance is excess over, and shall not contribute with any of the other

insurance, whether primary, excess, contingent or on any other basis." [Dkt. 1-7] at 7.

In light of the foregoing policy language, the basic dispute in this case is whether the "other insurance" provisions in the National Union policies apply because the JIF provided "insurance," and thereby render the National Union policies excess over the JIF's primary coverage.

    C.    <u>The *Statewide* Decision</u>

The policy language in the National Union policies is similar to policy language at issue in the *Statewide* case, in which the New Jersey Supreme Court resolved a priority-of-coverage dispute between another joint insurance fund and the issuer of a commercial liability policy. In that case, a boy died in a tragic accident on the beach in Long Branch, New Jersey, resulting in litigation against Long Branch and, ultimately, a settlement. *Statewide*, 253 N.J. at 122. As relevant to the coverage dispute, Long Branch participated in a joint insurance fund called the Statewide Insurance Fund (Fund), with $10 million of available liability coverage. *Id.* at 122-23. Long Branch also had obtained a commercial general liability policy from Star Insurance Company, with $10 million in coverage after a $1 million self-insured retention. *Id.* at 123. Long Branch satisfied the retention for the settlement, and the dispute that ensued was whether the Fund or Star bore the primary coverage responsibility for the remainder. *Id.* That question turned on the language in the Star policy that provided that its coverage was excess over "other

insurance" that Long Branch maintained.  *Id.*  As National Union argues in this case, Star argued that the Fund's coverage constituted "other insurance" and that the Fund's policy therefore provided the primary coverage.  *Id.* at 124.

The Supreme Court disagreed.  It held that under the plain language of the JIF enabling statute, the liability coverage that Long Branch maintained through its participation in the Fund was not "other insurance" because it was not "insurance." *Statewide*, 253 N.J. at 124-28.  To the contrary, the court concluded that Long Branch and other participants in the Fund maintained "self-insurance" under the statute.  *Id.*  The court explained:  "Under th[e] clear statutory provision, the Fund is not an insurance company; the Fund's authorized activities do not constitute either the transaction of insurance or doing the business of insurance . . . ."  *Id.* at 126. The Supreme Court went on:  "Applying the clear and plain terms of [the statute], we hold that JIFs cannot insure members; instead, JIFs enable members to self-insure, spread risk, and reduce insurance costs."  *Id.* at 128.  This is so, the court explained, notwithstanding references in the statute and plan documents to "insurance."  *Id.*  In light of the unambiguous statutory text, the Supreme Court concluded that "[a]s a matter of law, Long Branch's liability protection as a Fund member is through 'self-insurance,' not 'insurance.'"  *Id.*  And although the court found the statutory language unambiguous, it went on to explain that "a close look at the general differences in risk allocation between JIFs and commercial general

6

liability carriers reinforce[d its] conclusion that JIF members are self-insured." *Id.* at 129-31.

In sum, because Long Branch did not maintain "other insurance" through its participation in the Fund, the Star policy's "other insurance" clause did not apply and therefore Star was primarily responsible for providing coverage. *Id.* at 131.

D.    The Present Discovery Dispute

The JIF argues that *Statewide* controls this case. Because the JIF did not provide insurance, it says, the "other insurance" provisions in the National Union policies do not apply, leaving National Union primarily responsible for funding the underlying settlement. In response to that argument, National Union seeks to distinguish *Statewide* because the JIF here maintained a commercial reinsurance policy with MunichRe, a situation not presented or addressed in *Statewide*. [Dkt. 27] at 4. In essence, National Union intends to argue that because the JIF bore only the first $250,000 in risk as a result of the reinsurance policy, the remaining $4.75 million in exposure was not true "self-insurance" under the JIF enabling statute and *Statewide*, but rather was "insurance."[2] The reinsurance policy, according to National Union, triggered the "other insurance" provisions in the National Union policies, rendering the JIF policy the primary source of coverage.

---

[2]    National Union concedes that *Statewide* applies to the initial $250,000 retention amount for which the JIF bore responsibility under the reinsurance policy.

To support its efforts to distinguish *Statewide*, National Union served discovery requests on the JIF seeking documents and communications related to the reinsurance policy. According to National Union, it "seeks discovery as to whether MunichRe was simply acting as another commercial insurer for [the Borough] in the adjustment and defense of the Underlying Action so that the holding of *Statewide*, addressing a JIF fund that was true 'self-insurance,' should not guide the outcome of this dispute." [Dkt. 27] at 6. At issue here are National Union's Requests to Produce 2 through 6. They seek, respectively, documents relating to the marketing and sale of the reinsurance policy; documents relating to the negotiation, underwriting, procurement, and purchase of the reinsurance policy; communications between the JIF, MunichRe, and any insurance broker, consultant, or professional that the JIF used to select, negotiate, underwrite, or procure the reinsurance policy; communications between the JIF, its third-party claims administrator, and MunichRe regarding the underlying accident and ensuing litigation; and the claim file documents that the JIF or its third-party administrator maintained for the accident and litigation.[3]

The JIF objects to the discovery that National Union seeks on relevance and proportionality grounds. It contends that the JIF enabling statute, as interpreted in *Statewide*, mandates that JIFs are not insurers and do not provide insurance.

---

[3]    National Union's first request sought the MunichRe reinsurance policy itself, which the JIF produced.

The JIF contends that this remains so as a matter of law, notwithstanding the existence of the MunichRe reinsurance policy.

## II.  LEGAL STANDARDS

Rule 26(b) governs the scope of discovery in civil litigation.  It provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).  At the discovery stage, "courts construe relevanc[e] broader" and "more liberally in favor of disclosure."  *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 344 F.R.D. 207, 215 (D.N.J. 2023).  "[A]ny matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case" is considered relevant.  *Burns v. SeaWorld Parks & Ent., Inc.*, Civ. No. 22-2941, 2023 WL 8041305, at *1 (E.D. Pa. Oct. 3, 2023) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (internal quotation marks omitted). The relevance standard, however, is context-dependent, and the Court may exercise its discretion to identify its boundaries under the circumstances of each case. *See Salamone v. Carter's Retail, Inc.*, Civ. No. 09-5856 (GEB), 2011 WL 310701, at *10 (D.N.J. Jan. 28, 2011).

Rule 26 also requires proportionality and, accordingly, "relevanc[e] alone is not sufficient to obtain discovery."  *Liberty Int'l Underwriters Can. v. Scottsdale Ins. Co.*, Civ. No. 12-4934 (NLH), 2017 WL 721105 at *2 (D.N.J. Feb. 23, 2017).  Factors that the Court may consider include "the importance of the issues at stake in the

action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Proportionality determinations are made on a case-by-case basis with the aforementioned factors, and 'no single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional.'" *Emps. Ins. Co. of Wasau v. Daybreak Express, Inc.*, Civ. No. 16-4269 (JLL), 2017 WL 2443064, at *2 (D.N.J. June 5, 2017) (quoting *Bell v. Reading Hosp.*, Civ. No. 13-5927 (JKG), 2016 WL 162991 at *2 (E.D. Pa. Jan. 14, 2016)).

Ultimately, although the scope of discovery is broad, it "is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). As one former member of this Court has aptly stated: "Discovery always involves balance—relevance and need versus proportionality, business interests, and burden and expense." *In re EthiCare Advisors, Inc.*, Civ. No. 20-1886 (WJM), 2020 WL 4670914, at *4 (D.N.J. Aug. 12, 2020) (Falk, J.). Striking the appropriate balance is a decision within the Court's broad discretion. *See Wood v. Borough of Woodlynne*, Civ. No. 21-20738 (RMB), 2024 WL 2974239, at *3 (D.N.J. June 13, 2024).

## III. DISCUSSION

In this Court's view, the JIF enabling statute and the New Jersey Supreme Court's opinion in *Statewide* control the present discovery dispute and render the discovery that National Union seeks not relevant and not proportional to the needs of the case. Four related and unambiguous statutory provisions demonstrate that even when a joint insurance fund obtains a reinsurance contract to reallocate risk that its members would otherwise directly bear, the fund does not convert to providing "insurance," but continues to be a platform for participating members to "self-insure."

*First*, N.J.S.A. 40A:10-39 requires the commissioners of a joint insurance fund to prepare bylaws that include "[p]rocedures for the purchase of commercial direct insurance or reinsurance, if any." *Second*, N.J.S.A. 40A:10-40 requires commissioners of a joint insurance fund to prepare a risk management plan that includes, among other things, "[r]einsurance to be purchased, if any, and the amount of premium therefor," as well as any "coverage to be purchased from a commercial insurer, if any." *Third*, and consistent with this provision, N.J.S.A 40A:10-42 says that upon approval of its bylaws and risk management plan, "a joint insurance fund may provide insurance coverage to its member local units by self-insurance, the purchase of commercial insurance or reinsurance, or any combination thereof." These three provisions, then, unambiguously permit a joint insurance fund to obtain, on behalf of its members, commercial insurance, reinsurance, and self-insurance,

11

and any combination thereof.  Said differently, the statute expressly makes the act of obtaining commercial reinsurance an "authorized activit[y]" of a joint insurance fund.

*Fourth*, N.J.S.A. 40A:10-48 provides:  "A joint insurance fund established pursuant to the provisions of this act is not an insurance company or an insurer under the laws of this State, *and the authorized activities of the fund do not constitute the transaction of insurance nor doing an insurance business*."  (Emphasis added.)

The last of these provisions, N.J.S.A. 40A:10-48, provided the basis for the New Jersey Supreme Court's holding in *Statewide* that as a matter of law, "JIFs cannot insure members" but instead "enable members to self-insure, spread risk, and reduce insurance costs."  253 N.J. at 128.  To be sure, the specific question presented here—whether a joint insurance fund's commercial reinsurance policy changes the equation—was neither asked nor answered in *Statewide*.  But the statutory language on that question is no less clear.  The three provisions above, N.J.S.A. 40A:10-39, -40 and -42, specifically and unambiguously authorize a joint insurance fund to obtain reinsurance on behalf of its members.  Under the express terms of N.J.S.A. 40A:10-48, a JIF's decision to do so does not change the statutory character of the liability coverage that the fund provides from "self-insurance" to "insurance."

12

Relying solely on a 35-year-old intermediate appellate opinion, National Union argues that at least in some contexts, "self-insurance" can be considered the "functional equivalent" of "insurance." *See* [Dkt. 27] at 4-5 (discussing *White v. Howard*, 240 N.J. Super. 427 (App. Div. 1990)). In *White*, the Appellate Division addressed an "other insurance" provision in a commercial policy that collided with a rental car company's decision to rent cars as a certified self-insurer. In that context, the court held that the rental car company's "decision to act as a self-insurer and secure the applicable New Jersey certificate was the functional equivalent of its writing a separate insurance policy covering itself." *Id.* at 431. Accordingly, the court held that an "other insurance" provision in a lessee's insurance policy had been triggered because the rental car company provided itself "insurance." *Id.* at 431-34. Therefore, the court concluded, the company and not the lessee's insurance carrier was primarily responsible for covering a settlement payment arising from an accident involving one of the company's cars. *Id.*

*White* did not arise in the context of the special statutory framework and unambiguous statutory language governing joint insurance funds; it involved purely private parties. The decision rested largely on policy grounds; nothing in the Appellate Division's analysis rested on statutory language like that in *Statewide*, and it had nothing to do with joint insurance funds. In this context, the Court does not read the JIF enabling statute and *Statewide* to allow for a "functional equivalence" argument of the kind recognized in *White*. Neither the statute nor the

New Jersey Supreme Court's decision offers so much as a hint of any exceptions to the legislative declaration that joint insurance funds do not provide insurance. Given the statute's explicit terms and the New Jersey Supreme Court's equally emphatic decision interpreting it, the Appellate Division's earlier decision in *White* is an especially weak basis on which to distinguish *Statewide*.

Accordingly, the Court concludes that the discovery National Union seeks is not relevant to the parties' coverage dispute because under *Statewide*, the JIF here did not provide insurance as a matter of law. Documents and communications regarding the marketing, selection, negotiation, and procurement of the policy; communications between the JIF, its third-party administrator, and MunichRe; and anything in the JIF's relevant claim file documents will not alter that legal conclusion, and so they are not relevant.[4]

But even if one assumes that the New Jersey Supreme Court *might* allow for a "functional equivalence" argument or an exception to *Statewide*, the Court concludes

---

[4]    Importantly, this conclusion does not necessarily mean that the JIF ultimately cannot bear or share primary coverage responsibility under the explicit terms of its own liability policy. In *Statewide*, the fund policy at issue provided that it was *excess* over other commercial insurance that the joint insurance fund maintained. 253 N.J. at 122-23. Here, by contrast, the JIF coverage form expressly states that the JIF would provide *primary* coverage for any incident involving an "auto" that the Borough owned. [Dkt. 1-3] at SCJIF-0011. The New Jersey Supreme Court did not address in *Statewide* what happens when the terms of a joint insurance fund's policy make that fund primarily responsible for a particular incident. Accordingly, whether the JIF ultimately bears or shares primary coverage responsibility pursuant to its own policy language is a merits question for another day. Resolution of that question, however, has nothing to do with National Union's discovery requests regarding the MunichRe reinsurance policy.

14

that the requested discovery here is not proportional to the needs of the case.  In the Court's judgment, any possible distinction of *Statewide* would rest on the existence of the reinsurance policy itself and the argument that as a matter of economic reality, the JIF transferred $4.75 million in pooled municipal risk to a commercial reinsurer. *Cf. Statewide*, 253 N.J. at 129-31 (explaining that municipalities' retention of risk through a joint insurance fund reinforced the conclusion that the unambiguous statutory language was dispositive).  Indeed, National Union itself emphasizes that as a result of the reinsurance policy, the JIF and its participating members retained only 5% of the overall risk (through the initial self-insured retention amount of $250,000) and effectively transferred the other 95% of risk (the remaining $4.75 million) to MunichRe.  *See* [Dkt. 27] at 6.  National Union has a copy of the reinsurance policy, the JIF policy, and its associated bylaws, risk management plan, and other pertinent JIF documents, and as a result knows which entity bore ultimate financial responsibility for funding the underlying settlement payment beyond the initial $250,000 initial retention amount.  [Dkt. 27] at 6 n.5; [Dkt. 28] at 10.  Moreover, the JIF has agreed to make a representative available to testify at a deposition regarding its risk management plan and its operations.  [Dkt. 28] at 8. That, in the Court's view, is all that National Union reasonably needs to prosecute its effort to distinguish *Statewide*.

Accordingly, to the extent that the statute and *Statewide* ever permit for a "reinsurance exception" or "functional equivalence" argument, National Union has

not sufficiently explained why obtaining internal documents and communications regarding the reinsurance policy could assist the effort to distinguish *Statewide*. National Union says that it "seeks discovery as to whether MunichRe was simply acting as another commercial insurer for [the Borough] in the adjustment and defense of the Underlying Action so that the holding of *Statewide*, addressing a JIF fund that was true 'self-insurance,' should not guide the outcome of this dispute." [Dkt. 27] at 6. National Union's argument is that *if* the requested "discovery confirms that MunichRe had been assuming functions atypical of reinsurers and more in line with standard adjusting functions, that would support National Union's position that the []MunichRe was the 'functional equivalent' of insurance, thereby rendering *Statewide* inapposite." [Dkt. 27] at 7. Aside from the doubtful assumption that the *White* "functional equivalence" argument applies to joint insurance funds, it is speculation to suggest that documents and communications regarding the JIF's procurement of the policy, and MunichRe's communications with the JIF reflecting review of the claim here might have gone beyond standard practice. The Court does not agree with the suggestion that such a possibility makes the internal documents that National Union seeks proportional to the needs of the case, or that they could support National Union's arguments here.

Accordingly, while the Court does not find that production of the materials would be unduly burdensome to the JIF, the Court does believe that the discovery

will not be important or helpful to the resolution of this action.[5]  The net result of all this is that the document requests amount, in the Court's view, to a generalized request for access to the JIF's internal files and communications to see what might be found.  Balancing the relevant proportionality factors, the Court concludes that the requested discovery—even if relevant—is not proportional to the needs of the case.

***

One final point bears emphasis.  The undersigned appreciates that the present task is to resolve a discovery dispute and not the merits.  Yet the relevance and proportionality analyses turn on the same body of law that, in the end, may decide the suit.  Even so, this Memorandum Order does not—nor could it—finally determine the parties' respective coverage responsibilities.  Exercising its discretion to find an appropriate balance, the undersigned's considered view is that the JIF enabling statute and the *Statewide* decision render National Union's discovery requests not relevant and not proportional to the needs of the case.  The JIF has produced the MunichRe policy and other policy documents and has agreed to make a representative available to testify at a deposition regarding the JIF's risk management plan and its operations.  In light of the statutory language and the

---

[5]    The Court does recognize that at least some burden would fall to the JIF given its representation that some of the responsive materials are likely to include privileged communications requiring review, redaction, and generation of a privilege log.  [Dkt. 28] at 7.  This burden, while modest, factors into the Court's analysis and weighs against compelling disclosure.

17

New Jersey Supreme Court's decision, this Court concludes that that discovery is sufficient for National Union to present its ultimate arguments on the merits— *i.e.*, that *Statewide* is distinguishable and that the MunichRe reinsurance policy triggered the "other insurance" provisions in National Union's policies.  Nothing in this Memorandum Order should be understood to preclude National Union from reasserting those or any other arguments on the merits at the appropriate time. *Cf. supra* n.4.

## IV.  CONCLUSION

For the reasons stated, the JIF's objections to National Union's Requests to Produce 2 through 6 are sustained and National Union's request to compel the JIF to produce materials responsive to those requests is denied.  The Clerk is directed to terminate the parties' motions addressing the discovery dispute [Dkts. 27, 28].

**IT IS SO ORDERED** this 6th day of January, 2025.


_____
J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE

18