**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,**<br><br>Plaintiff,<br><br>v.<br><br>**SOMERSET COUNTY JOINT INSURANCE FUND,**<br><br>Defendant. | Civil Action No. 24-916 (ZNQ) (JBD)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon Cross-Motions for Summary Judgment. Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("NU" or "Plaintiff") filed its Motion for Summary Judgment on January 30, 2026. ("Pl.'s Mot. for Summary J.", ECF No. 48.) Plaintiff's Motion was accompanied by both a Statement of Material Facts ("Pl.'s SOMF", ECF No. 48-1) and a moving brief ("Pl. Moving Br.", ECF No. 48-10). Defendant Somerset County Joint Insurance Fund ("SCJIF" or "Defendant") filed its Response to Plaintiff's Statement of Facts ("Def.'s RSOMF", ECF No. 51-1) and opposition brief ("Def.'s Opp'n Br.", ECF No. 51) on March 6, 2026. Plaintiff filed a reply brief on March 20, 2026. ("Pl.'s Reply Br.", ECF No. 56.)

On January 30, 2026, Defendant filed its Cross-Motion for Summary Judgment. ("Def.'s Cross-Mot. for Summary J.", ECF No. 49.) Defendant's Motion was also accompanied by a Cross-Statement of Material Facts ("Def.'s Cross-SOMF", ECF No. 49-1) and a brief in support of Defendant's Cross-Motion ("Def.'s Cross-Moving Br.", ECF No. 49-17). On March 6, 2026,

Plaintiff filed a Response to Defendant Cross-Statement of Material Facts ("Pl.'s Cross-RSOMF", ECF No. 52-1) and its opposition brief ("Pl.'s Opp'n Br.", ECF No. 52). Defendant filed its reply brief on March 20, 2026. ("Def.'s Reply Br.", ECF No. 55.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **DENY** Plaintiff's Motion for Summary Judgment, and **GRANT** Defendant's Cross-Motion for Summary Judgment.

## I. BACKGROUND AND PROCEDURAL HISTORY

The Court outlines only the most salient facts necessary to contextualize the present dispute.

### A. THE RELEVANT POLICIES

SCJIF is a joint insurance fund created under N.J. Stat. Ann. § 40A:10-36, *et seq*. (the "Joint Insurance Fund Act"), of which the Borough of South Plainfield (the "Borough") is a member. (Def.'s Cross-SOMF ¶¶ 4–5; Pl.'s Cross-RSOMF ¶¶ 4–5.) SCJIF provided a Casualty Insurance Coverage Document (the "Coverage Form") to the Borough, which provided a $5 million liability limit for each occurrence. (Pl.'s SOMF ¶¶ 6–7; Def.'s RSOMF ¶¶ 6–7; *see generally* Coverage Form, ECF No. 48-5.) The Coverage Form states, in relevant part, that:

> a. For any covered "auto" [the Borough] own[s], this Coverage Form provides primary insurance. For any covered "auto" [the Borough does not] own, the insurance provided by this Coverage Form is excess over any other collectible insurance .
>
> . . .
>
> d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess of primary, we will pay only our share. Our share is the Proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

(Pl.'s SOMF ¶ 11; Def.'s RSOMF ¶ 11; *see also* Coverage Form at 11.) SCJIF subsequently purchased a Casualty Excess of Loss Reinsurance Agreement (the "Reinsurance Agreement") from Munich Reinsurance America, Inc. ("MunichRe") pursuant to N.J. Stat. Ann. § 20A:10-48. (Def.'s Cross-SOMF ¶¶ 12, 14; Pl.'s Cross-RSOMF ¶¶ 12, 14.)

The Rescue Squad of South Plainfield, Inc. ("the Squad"), purchased a business auto policy ("NU Auto Policy") and an excess liability policy ("NU Excess Policy") from Plaintiff. (Pl.'s SOMF ¶¶ 16, 17, 22; Def.'s RSOMF ¶¶ 16, 17, 22.) The NU Auto Policy provided a $1 million liability limit for each accident, and the NU Excess Policy was subject to a $3 million liability limit for each occurrence. (Pl.'s SOMF ¶¶ 17, 23; Def.'s RSOMF ¶¶ 17, 23.)

The NU Auto Policy states, in relevant part, that

> a. For any covered "auto" [the Squad] own[s], this Coverage Form provides primary insurance. For any covered "auto" [the Squad does] own, the insurance provided by this Coverage Form is excess over any other collectible insurance.
>
> . . .
>
> d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

(Pl.'s SOMF ¶ 19; Def.'s RSOMF ¶ 19; *see also* NU Auto Policy at *47[1], ECF No. 84-6.)

The NU Excess Policy states that Plaintiff "will pay on behalf of the [Squad] the 'ultimate net loss' in excess of the 'retained limit' because of 'injury or damage' to which insurance provided under this Coverage Part applies . . . ." (Pl.'s SOMF ¶ 25; Def.'s RSOMF ¶ 25; *see also* NU Excess Policy at *4, ECF No. 48-7.) The Excess Policy further provides that:

[1] Page numbers within a record cite that are preceded by an asterisk refer to the page numbers atop the CM/ECF header because the NU Policies lack internal page numbers.

> a. This insurance is excess over and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part. When this insurance is excess, if no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all those other insurers.
>
> b. When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:
>
> > (1) The total amount that all such other insurance would pay for the loss in the absence of the insurance provided under this Coverage Part; and
> >
> > (2) The total of all deductible and self-insured amounts under all that other insurance.

(Pl.'s SOMF ¶ 26; Def.'s RSOMF ¶ 26; *see also* NU Excess Policy at *7.)

## B. THE UNDERLYING STATE ACTION AND PROCEDURAL HISTORY

The present dispute arises from a settlement agreement resolving an underlying bodily injury action before the Superior Court of New Jersey, Middlesex County, *Joseph and Camille Giovannone v. Borough of South Plainfield, et al.*, Docket No. MID-L-001289-22. (Pl.'s SOMF ¶ 1; Def.'s RSOMF ¶ 1.) The underlying bodily injury action concerned an automobile accident causing catastrophic injuries to Joseph Giovannone. (Pl.'s SOMF ¶¶ 2–4; Def.'s RSOMF ¶¶ 2–4; Def.'s Cross-SOMF ¶ 1; Pl.'s Cross-RSOMF ¶ 1.) The automobile at issue was an ambulance owned by the Borough, borrowed by the Squad, and driven by the Squad's employee, Alyssa L. Moffitt ("Moffitt"). (Pl.'s SOMF ¶¶ 2, 17; Def.'s RSOMF ¶¶ 2, 17.) Plaintiff and Defendant jointly funded a settlement with the Giovannones on behalf of the Borough, the Squad, and Moffitt to fully resolve the claims asserted in the underlying state action. (Pl.'s SOMF ¶ 5; Def.'s RSOMF ¶ 5.) That action settled for $4,750,000, with Plaintiff conditionally contributing $2 million, and the Borough, through SCJIF, conditionally contributing $ 2,750,000. (Def.'s Cross-SOMF ¶ 11; Pl.'s Cross-RSOMF ¶ 11.)

Plaintiff and Defendant agreed that their respective contributions would be subject to reallocation pending adjudication of their respective coverage obligations in this action. (Pl.'s SOMF ¶ 5; Def.'s RSOMF ¶ 5.) As such, Plaintiff initiated the present action on February 16, 2024 under 28 U.S.C. § 2201, *et seq.* ("the Declaratory Judgment Act"), seeking a declaration that: (1) Defendant's Coverage Form provides primary insurance coverage for the underlying automobile accident; (2) alternatively, Defendant's Coverage Form and NU's Auto Policy are co-primary insurance policies; and (3) the NU Excess Policy is a true excess policy affords coverage for the underlying incident after the liability limits under Defendant's Coverage Form and Plaintiff's Auto Policy are exhausted.[2] (*See generally* Compl., ECF No. 1.)

Defendant subsequently filed an answer and asserted counterclaims against Plaintiff under the Declaratory Judgment Act, seeking an opposite declaration that: (1) the NU Auto Policy affords primary coverage to any legal protection afforded by the Defendant; and (2) the NU Excess Policy provides coverage primary to any legal protection afforded by the Defendant. (Def.'s Answer & Counterclaim at 14, ECF No. 5.)

Following the parties' discovery exchange, Plaintiff filed its Motion for Summary Judgment, accompanied by its Moving Brief on January 30, 2026. (Pl.'s Mot. for Summary J.; Pl.'s Moving Br.) Defendant filed its Cross-Motion for Summary Judgment and its Cross-Moving Brief on the same date. (Def.'s Cross-Mot. for Summary J.; Def's Cross-Moving Br.) The parties filed their respective opposition briefs on March 6, 2026 (*see* Def.'s Opp'n Br., Pl.'s Opp'n Br.), and their respective reply briefs in further support of their motions on March 20, 2026 (*see* Pl.'s Reply Br., Def.'s Reply Br.).

[2] There is no dispute that the Squad and Moffitt qualified as insureds under the NU Auto and Excess Policies, and that they are entitled to defense and indemnification under Defendant's Coverage Forms. (*See* ECF No. 48-5.)

## II. SUBJECT MATTER JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000. (*See generally* Compl.)

## III. LEGAL STANDARD

### A. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); s*ee also Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial.

*Anderson*, 477 U.S. at 248–49. The summary judgment standard, however, does not operate in a vacuum. The Court "must view the evidence presented through the prism of the substantive evidentiary burden," *id.* at 254, and construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny P.A.*, 139 F.3d 386, 393 (3d Cir. 1998).

**B. TRADITIONAL PRINCIPLES OF INTERPRETING INSURANCE CONTRACTS UNDER NEW JERSEY LAW**

In New Jersey, interpreting an insurance contract is a legal question to be resolved by the Court. *Rena, Inc. v. Brien*, 708 A.2d 747, 756 (N.J. Super. Ct. App. Div. 1998) (citation omitted); *see also Baron v. Nautilus Ins Co.*, 747 F. Supp. 3d 697, 706 (D.N.J. 2024) ("[T]he interpretation of an insurance policy is a question for the [c]ourt to decide as a matter of law." (citation omitted)). "In attempting to discern the meaning of a provision in an insurance contract, the plain language is ordinarily the most direct route." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008) (citing *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (N.J. 2001)); *see also Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) ("In considering the meaning of an insurance policy, [the court] interpret[s] the language 'according to its plain and ordinary meaning.'" (quoting *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992))). "If the plain language of the policy is unambiguous, [the court] will not engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased." *Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 129 A.3d 1069, 1075 (N.J. 2016) (quotation marks and citation omitted); *see also Chubb Custom Ins. Co.*, 948 A.2d at 1289 ("If the language is clear, that is the end of the inquiry." (citation omitted)).

## IV. DISCUSSION

Both parties move for summary judgment, taking markedly different positions with respect to their coverage obligations. The Court begins with a summary of each side's moving arguments.

Plaintiff argues that Defendant's Coverage Form provides primary auto insurance because the ambulance involved in the underlying state action was owned by the Borough, and as a result, the NU Auto Policy becomes excess insurance for the insureds' non-owned vehicle. (Pl.'s Moving Br. at 5.) Plaintiff submits that the New Jersey Supreme Court's relatively recent decision in *Statewide Insurance Fund v. Star Insurance Company*, 289 A.3d 448 (N.J. 2023) ("*Statewide*") is factually distinguishable because: (1) the New Jersey Supreme Court evaluated only conflicting "Other Insurance" clauses, and here, there is no conflict because Defendant's Coverage Form designates itself as the primary insurer for the Borough's owned automobiles; and (2) Defendant's members chose to reinsure the entirety of the Coverage Form, making it more akin to traditional insurance. (*Id.* at 5–8.) Plaintiff contends, in the alternative, that if *Statewide* were applicable, the New Jersey Supreme Court's analysis turned back to the language of the policies at issue in that case, and here, the express terms of the Coverage Form and the NU Auto Policy contemplate the parties being co-primary insurers for which they agreed to provide primary coverage on a pro-rata basis. (*Id.* 9–13.) Finally, Plaintiff avers that the language of the NU Excess Policy is excess to the liability limits provided by the Coverage Form, and nothing in *Statewide* supports a contrary outcome. (*Id.* at 13–19.)

Defendant has a different understanding of *Statewide*. Defendant contends that according to *Statewide*, a joint insurance fund does not provide insurance to its members, and traditional commercial insurance must be exhausted prior to the disbursement of public funds in connection with settlement of the underlying state action. (Def.'s Cross-Moving Br. at 18–20.) Defendant

subsequently articulates that its purchase of reinsurance from MunichRe was authorized by statute and does not qualify as engaging in the business of insurance. (*Id.* at 21–23.) Defendant submits that if the Court were to adopt Plaintiff's position and consider Defendant's purchase of reinsurance as producing the "functional equivalent" of commercial insurance, it would fly in the face of the legislative intent undergirding the Joint Insurance Fund Act. (*Id.* at 22–29.)

The Court's interpretation and application of *Statewide* appears dispositive to the present matter. Before turning to the merits of the parties' respective motions, the Court begins with an overview of the *Statewide* decision.

### A. *STATEWIDE INSURANCE FUND v. STAR INSURANCE COMPANY*, 289 A.3d 448 (N.J. 2023)

In *Statewide Insurance Fund v. Star Insurance Company*, the New Jersey Supreme Court considered whether a public entity joint insurance fund provided insurance to its members. 289 A.3d 448, 449 (N.J. 2023). Much like the present matter, *Statewide* arose after the settlement of an underlying negligence action brought against Long Branch, Long Branch Beach Patrol, and the seasonal beach officers. *Id.* at 449-450. Long Branch was a member of the plaintiff's joint insurance fund and was eligible to receive $10 million in liability coverage per occurrence. *Id.* at 450. The plaintiff's contracting documents enabled Long Branch to recover from the fund only after exhausting other insurance or self-insurance to which it was entitled. *Id.* Long Branch, additionally, purchased a commercial general liability policy from the defendant, which provided Long Branch $10 million in liability insurance coverage, excess to a $1 million self-insured retention. *Id.* The parties of that action agreed that the defendant's insurance coverage was excess over "other insurance." *Id.*

On certification to the New Jersey Supreme Court, the defendant argued that, regardless of statutory framework, the plaintiff provided insurance, and therefore, its own "other insurance"

clause was triggered, rendering its own coverage excess to the insurance provided by the plaintiff. *Id.* at 450–51. The plaintiff argued that it did not provide its members insurance by statutory design and Long Branch self-insured by joining the plaintiff's joint insurance fund. *Id.* at 451. The plaintiff, accordingly, submitted that the defendant's "other insurance" clause could not be triggered and the plaintiff's joint insurance fund would provide excess coverage only after the defendant's policy limit was exhausted. *Id.*

The New Jersey Supreme Court construed the statutory framework and legislative intent behind the Joint Insurance Fund Act, N.J. Stat. Ann. §§ 40A:10-36 and -48. *Id.* at 451–52. The joint insurance fund's enabling statute, N.J. Stat. Ann. § 40A:10-36, statute provides, in relevant part, that:

> The governing body of any local unit . . . may by resolution agree to join together with any other local unit or units to establish a joint insurance fund for the purpose of insuring against liability . . . through self[-]insurance, the purchase of commercial insurance or reinsurance, or any combination thereof . . . .

N.J. Stat. Ann. § 40A:10-36(a). Pursuant to N.J. Stat. Ann. § 40A:10-48:

> A joint insurance fund . . . is not an insurance company or an insurer under the laws of [New Jersey], and the authorized activities of the fund do not constitute the transaction of insurance nor doing an insurance business. A [joint insurance] fund established pursuant to this Act shall not be subject to the provisions of Subtitle 3 of Title 17 of the Revised States.

N.J. Stat. Ann. § 40A:10-48. The New Jersey Supreme Court construed these provisions to mean that: (1) Long Branch exercised its rights under the enabling statute by joining the plaintiff's fund through self-insurance; (2) Long Branch separately purchase liability insurance from the defendant and another insurer; and (3) the plaintiff's fund is not an insurance company, it does not do business as an insurer, and it is not subject to New Jersey's insurance laws. *Id.* at 452. Thus, according to the clear and plain text of N.J. Stat. Ann. § 40A:10-48, the New Jersey Supreme Court held that

joint insurance funds "*cannot insure members*; instead [joint insurance funds] *enable[ ] members to self-insure, spread risk, and reduce insurance costs*." *Id.* at 453 (emphases added).

The New Jersey Supreme Court rejected the defendant's position that the word "insurance" appearing in the Joint Insurance Fund Act means that joint insurance funds provide insurance to their members. *Id.* Additionally, the New Jersey Supreme Court was not swayed by the defendant pointing out that the plaintiff's contracting documents used the term "insurance" because a contract could not override the New Jersey Legislature's clear intent in passing the Joint Insurance Fund Act. *Id.* As such, the New Jersey Supreme Court found the plain text of the Joint Insurance Fund Act dispositive to the matter. *Id.*

As a result, the New Jersey Supreme Court determined that the defendant's insurance policy was primary in covering the underlying negligence action settlement because (1) self-insurance is not the same as insurance such that the defendant's "other insurance" clause was not triggered; and (2) the defendant's "other insurance" clause did not contemplate self-insurance available to the members of the plaintiff's fund. *Id.* at 455.

### B. SCJIF IS NOT AN INSURER AND THE COVERAGE FORM DOES NOT PROVIDE INSURANCE

Despite Plaintiff's exhaustive arguments to the contrary, the *Statewide* decision leaves no room for equivocation. As a matter of law, Defendant, a joint insurance fund, does not provide insurance. *See id.* at 453 (holding joint insurance funds cannot insure members); *accord* N.J. Stat. Ann. § 40A:10-48. That Defendant's Coverage Form states it "provides primary insurance" for covered automobiles is irrelevant under the holding of *Statewide* because a joint insurance fund cannot provide insurance. *Statewide*, 289 A.3d at 453 ("Nor does referencing the word 'insurance' in the Fund's contracting document override the Legislature's clear mandate that [joint insurance funds] are not insurance companies [and] that they cannot insure members . . . . The Fund's forms

and terminology cannot nullify the statute"). And finally, joint insurance funds are statutorily authorized to purchase reinsurance, and such a purchase does not transform Defendant's activities into those of the business of insurance. *Id.* (noting that a joint insurance fund's "authorized activities [under the Joint Insurance Fund Act] does not constitute 'the transaction of insurance nor doing an insurance business.'"); *see also* N.J. Stat. Ann. §§ 40:10-39, -40, -42 (statutory provisions authorizing joint insurance funds to prepare and approve bylaws or risk management plans for, among other things, the purchase of commercial insurance or reinsurance).

Accordingly, as a matter of law, Defendant, by way of the language of its Coverage Form or through the act of purchasing commercial reinsurance, does not provide insurance.

### C. THE NU AUTO POLICY AFFORDS PRIMARY COVERAGE WITHOUT CONTRIBUTION FROM SCJIF

Separate and apart from the *Statewide* decision, the Court finds that the plain language of the NU Auto Policy designates Plaintiff as the primary insurer for the ambulance regardless of ownership. While this entire dispute has centered around a discrete provision in the NU Auto Policy, there is a preceding provision of the NU Auto Policy which appears to extend coverage for emergency service organizations, such as the Squad, and modifies the express terms of NU Auto Policy.[3]

As previously discussed, the "Other Insurance" provision in the NU Auto Policy provides that:

> a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you do[ not] own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

---

[3] For reasons unknown to the Court, neither party addressed this endorsement, and this provision provides independent support for the Court's ruling. *See O'Connor v. Zohra, L.L.C.*, Civ. No. A-1242-19, 2021 WL 1731789, at *5 (N.J. Super. Ct. App. Div. May 3, 2021) (noting that "[a]n insurance policy must be read as a whole . . . and will be enforced as written when its terms are clear[.]" (first citing *Hardy ex rel. Dowdell v. Abdul-Matin*, 965 A.2d 1165, 1169 (N.J. 2009); then citing *Mem'l Props., LLC v. Zurich Am. Ins. Co.*, 46 A.3d 525, 532 (N.J. 2012))).

(Pl.'s SOMF ¶ 19; Def.'s RSOMF ¶ 19; *see also* NU Auto Policy at *47.) There is, however, a section of the NU Auto Policy entitled "The Auto Liability Extension Endorsement for Emergency Services Organizations" ("Extension Endorsement"). (*See* NU Auto Policy at *36.) The Extension Endorsement reads:

> This endorsement modifies insurance provided under the following:
>
> BUSINESS AUTO COVERAGE FORM
>
> **1.** The following revisions are made to **Section II – Covered Autos Liability Coverage** and **Section IV – Business Auto Conditions**:
>
> **<u>VOLUNTEERS, EMPLOYEES, AND ELECTED OR APPOINTED OFFICIALS AS INSUREDS – NON-OWNED AUTO LIABILITY COVERAGE – PRIMARY BASIS</u>**
>
> **a. Coverage A.1., Who is An Insured**, under **Section II – Covered Autos Liability Coverage** is modified *by the addition* of paragraphs d., e., and f. as follows:
>
> **d.** *Any volunteer or "employee"* of yours while using a covered "auto" *you do[ not] own* . . . while performing duties related to the conduct of your business. Anyone else who furnished that "auto" is also an "insured".
>
> . . . .
>
> **b.** The following paragraph is *added* to **B.5., Other Insurance of Section IV – Business Auto Conditions**:
>
> **e.** Notwithstanding condition 5.a. and 5.d. above, for any covered "auto" you or any other emergency service organization or public entity do[ not] own . . .which is used by a person . . . as described by paragraph d. . . . of **Section II – Covered Autos Liability Coverage A.1., Who Is An Insured**, of this Coverage Form *provides primary insurance with no consideration or contribution from any other insurance for such "auto"*.

(*Id.* at 36–37 (emphases added).)

When, such as in this instance, an endorsement modifies "the terms of the original policy, the . . . endorsement controls. The rationale of this principle is that when a specific form of insurance is provided by an endorsement tailored to meet the particular needs of the insured and the [insurer], that language must be followed to carry out the intention of the parties." *Gabriele v. Lyndhurst Residential Cmty., L.L.C.*, 43 A.3d 1169, 1174 (N.J. Super. Ct. App. Div. 2012) (alterations in original) (internal quotation marks and citations omitted). Applying that principle here, the endorsement modifies the "Other Insurance" provision in the NU Auto Policy. It therefore does not matter whether the Borough owned the automobile. The endorsement explicitly provides primary coverage, without contribution from any other source of insurance, for the automobile as used by the Squad and its employes, such as Moffitt, for emergency service purposes. That language controls. *See Gabriele* 43 A.3d at 174.

Accordingly, the Court concludes that the NU Auto Policy provides primary coverage.

**D. THE NU EXCESS POLICY IS PRIMARY TO THE DISBURSEMENT OF DEFENDANT'S PUBLIC FUNDS IN CONNECTION WITH THE UNDERLYING STATE ACTION SETTLEMENT**

Here, the "Other Insurance" provision in the NU Excess Policy states that "[t]his insurance is excess over and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis." (Pl.'s SOMF ¶ 26; Def.'s RSOMF ¶ 26; *see also* NU Excess Policy at *7.) Following *Statewide*, Defendant's Coverage Form does not trigger the "Other Insurance" provision in Plaintiff's Excess Policy because a joint insurance fund does not insure its members. *See Statewide*, 289 A.3d at 453 ("[Joint insurance funds] are not insurance companies, . . . cannot insure members, and . . . their "authorized activities [under the Joint Insurance Fund Act] does not constitute 'the transaction of insurance nor doing an insurance business.'"). Therefore, the NU Excess Policy activates upon the exhaustion of the NU Auto Policy absent contribution from the limits provided under Defendant's Coverage Form.

This interpretation is supported by *Statewide*. In *Statewide*, the trial court judge construed the language of the "Other Insurance" clauses at issue. The *Statewide* defendant wrote its "Other Insurance" provision identically to Plaintiff's here in the NU Excess Policy. That provision stated, "This Insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis." *Statewide Ins. Fund v. Star Ins. Co.*, Civ. No. MON-L-1645-17, 2020 WL 13922075, at *2 (N.J. Super. Ct. L. Div. 2020) *aff'd*, Civ. No. A-4148-19, 2021 WL 4898504 (N.J. Super. Ct. App. Div. 2021). The trial court explained,

> [T]he other insurance clause in the Star policy does not reference "self-insurance," which is included in the Statewide other insurance clause. When negotiating and drafting its policy, specifically the other insurance clause, Star could have provided that the other insurance clause would be triggered by "valid and collectable insurance or self-insurance" in a similar manner as Statewide.[[4]] However, this language was not written into the Star policy. It is not the responsibility of this Court to rewrite a better policy and allow Star to trigger its other insurance clause based upon the presence of the antithesis of insurance, self-insurance. Assuming Star wanted to include self-insurance as triggering the other insurance clause, it should have been included in the policy and will not be written into the policy at summary judgment on a coverage motion.

*Id.* at *6. Thus, because Plaintiff's "Other Insurance" clause is not written in a manner that contemplates collectible self-insurance vis-à-vis a statutory joint insurance fund, the Court will not interpret the NU Excess Policy to be in excess to Defendant's Coverage Form because Defendant does not provide insurance.

Accordingly, the NU Excess Policy is triggered upon exhaustion of the NU Auto Policy. Only after exhaustion of both the limits under the NU Auto and Excess Policy can SCJIF remit the

---

[4] The *Statewide* plaintiff's "Other Insurance" clause provided that it was "excess over any other *valid and collectible insurance or self-insurance*." *Statewide*, 2020 WL 13922075, at *1 (emphasis added).

remaining settlement amount that is in excess of the NU Auto and Excess Policy limits. The Court concludes that a declaratory judgment in Defendant's favor is appropriate.

## V. CONCLUSION

For the reasons stated above, the Court will **DENY** Plaintiff's Motion for Summary Judgment and **GRANT** Defendant's Motion for Summary Judgment. Judgment will be entered in Defendant's favor declaring that: (1) the NU Auto Policy and NU Excess Policy are both primary to any legal protection afforded by Defendant; and (2) Defendant is entitled to reimbursement for any public monies it expended in excess of the limits provided by the NU Auto Policy and NU Excess Policy. An appropriate Order will follow.

Date: August 21, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**